25 F.3d 1054
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Joan R. KAREL, Defendant-Appellant.
 No. 93-3254.
 United States Court of Appeals, Seventh Circuit.
 Argued March 29, 1994.
Decided June 7, 1994.
 
 Appeal from the United States District Court for the Eastern District of Wisconsin, No. 92 CR 91, Terence T. Evans, Chief Judge.
 
 
 1
 E.D.Wis.
 
 
 2
 AFFIRMED.
 
 ORDER
 
 3
 Joan R. Karel was indicted with 13 counts of mail fraud in violation of 18 U.S.C. Sec. 1341. Following a bench trial she was found guilty on all counts charged. The court issued a written order on April 27, 1993, finding Karel guilty on all thirteen counts.
 
 
 4
 Karel notes that the government had to prove three elements to convict her. First, that she knowingly devised a scheme to defraud and obtained money by means of false pretenses and representations. Second, that she used the U.S. mail to carry out the scheme. Third, that she did so knowingly and with intent to defraud. Karal argues that the government's evidence was insufficient to prove the third element, that she acted with intent to defraud.
 
 
 5
 When reviewing challenges to the sufficiency of evidence,
 
 
 6
 [w]e will uphold a conviction if the evidence, when viewed in the light most favorable to the government, establishes that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We will not reweigh the evidence or judge the credibility of witnesses, and all reasonable inferences must be drawn in favor of the verdict.
 
 
 7
 United States v. Van Wyhe, 965 F.2d 528, 531 (7th Cir.1992). In another recent case, which involved an application of Sec. 1341, we noted that we will overturn a finding of intent only if "the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." United States v. Ashman, 979 F.2d 469, 480 (7th Cir.1992).
 
 
 8
 Viewed in the light most favorable to the government the facts are as follows.
 
 
 9
 On or about August 5, 1986 Karel applied for a disability income insurance policy from Northwestern Mutual Life Insurance Company. She paid a $76.00 premium to Northwestern's insurance agent in Chicago, William Schilling. Schilling forwarded Karel's application form to Northwestern's office in Milwaukee, where it was subject to routine review. Upon forwarding, Karel's disability income policy became effective.
 
 
 10
 On August 18, 1986, Karel suffered a disability. On August 29 Northwestern's Milwaukee office, as is its routine practice, conducted a telephone interview with Karel to verify the items on her application. The interviewer was Kathy Rehl. During the interview Karel told Rehl that her total earned income per year was between $110,000 and $115,000, and that this total included $39,000 in alimony.
 
 
 11
 A few days later Schilling was notified that Karel had improperly included alimony as part of her earned income on her application form for the disability policy. Schilling was asked to submit Karel's Internal Revenue Service forms to verify her income. On October 21, 1986, Northwestern's Milwaukee office received Karel's 1985 I.R.S. forms which listed her earned income as $111,606.00.
 
 
 12
 On October 26, 1986, Northwestern sent the disability income insurance policy to Karel. In February of 1987 Northwestern sent a letter to Karel confirming that it had received notice of her disability. The letter also defined earned income as "the sum of salary, wages, commissions, fees, bonuses, or other compensation earned by you from all sources of work performed by you less normal business expenses."
 
 
 13
 When a claim is filed within two years of the date that a disability income insurance policy becomes effective, Northwestern usually investigates it to determine whether to contest the claim. It assigned Barbara Schwigel to investigate Karel's claim. As part of the investigation, Karel was asked to submit a form listing her 1985 earned income. Schilling's assistant, Donna Cozzi-Palmer, was present when Karel signed it this form. The form indicated an amount which was not her true earned income.
 
 
 14
 Karel submitted disability forms each month from October 1986 until january 1989, receiving a total of $90,000. Starting in May of 1988 Northwestern began asking Karel for additional information regarding her pre-disability income. Eight months later, Karel finally submitted an I.R.S. form 1120 for 1985, which showed her salary as $6,500 per year. Karel was notified of the discrepancy between the $6,500 earned income shown on her I.R.S. firm 1120, and the $111,606 shown on her W2 and 1040 forms.
 
 
 15
 In May of 1989 Karel's attorney sent Northwestern a 1985 form 1040 for Karel showing yearly income of $11,600. This too, obviously enough, is not what Karel originally told Northwestern she had earned in 1985. Based on these discrepancies, Northwestern notified Karel that it was rescinding the disability income insurance policy and terminating her claims.
 
 
 16
 Applying the relevant standard, we ask ourselves whether there is any evidence upon which a rational trier of fact could conclude that Karel intended to defraud Northwestern.
 
 
 17
 The district court mentioned that it relied on several factors in finding against Karel. It noted the testimony of Kathy Rehl, which it found persuasive. It noted the disability benefits form which Karel signed, which listed income different from her true income. It also noted that Karel contacted Northwestern and asked about the processing of her disability benefits form. It noted that Karel was the sole owner of a business, and might be expected to know how much money she had earned and from what sources. The district court concluded that Karel actively sought benefit payments from Northwestern, that the policy would never have been written for her if she had not misstated her earned income, and that she had control of the documents which contained false statements about her income.
 
 
 18
 Drawing all reasonable inferences and not reassessing the credibility of witnesses, the district court's conclusion that Karel intended to defraud Northwestern is amply supported.
 
 
 19
 AFFIRMED.